1 | EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
2 | GIBSON, DUNN & CRUTCHER LLP
  1050 Connecticut Ave. NW
3 | Washington, DC 20036-5306
  Telephone: 202.955.8500
4 | Facsimile: 202.530.9606

5 | MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
6 | DAVID RUBIN, SBN 329852
  dwrubin@gibsondunn.com
7 | GIBSON, DUNN & CRUTCHER LLP
  333 South Grand Avenue
8 | Los Angeles, CA  90071-3197
  Telephone:  213.229.7000
9 | Facsimile:   213.229.7520

10 | Attorneys for Defendant
   BARTON & ASSOCIATES, INC. (erroneously
11 | named as BARTON MYERS ASSOCIATES,
   INC. and BARTON ASSOCIATES INC.)

12 |

13 |

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16 | WESTERN DIVISION

| | |
|---|---|
| LATISHA SHACONNA ANDERSON, an individual, on behalf of herself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARTON MYERS ASSOCIATES, INC., a California Corporation; BARTON ASSOCIATES INC., a California Corporation; BARTON & ASSOCIATES, INC., which will do business in California as BARTON MEDICAL, INC., a Delaware Corporation and DOES 1 through 50, Inclusive;<br><br>Defendants. | CASE NO. 2:22-cv-00084<br><br>**DEFENDANT BARTON & ASSOCIATES, INC.'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>*[Filed Concurrently with Declaration of Michael Holecek]*<br><br>(Los Angeles Superior Court Case No. 21STCV43314)<br><br>Action Filed:        November 24, 2021 |

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. TIMELINESS OF REMOVAL ................................................................. 1

II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ............... 2

    A.      The Proposed Class Consists of More Than 100 Members ..................... 3

    B.      Barton and Plaintiff Are Not Citizens of the Same State ........................ 4

    C.      The Amount in Controversy Exceeds $5 Million .................................... 7

          1.      Plaintiff's Claim for Failure To Pay Overtime Wages Independently Places More Than $2.6 Million in Controversy ....................................................................... 8

          2.      Plaintiff's Claims for Unpaid Meal Periods and Rest Periods Place More Than $3.4 Million in Controversy ........................... 10

          3.      Plaintiff's Claim for Alleged Violation of Labor Code Section 226 Places $485,000 in Controversy .............................. 12

          4.      Plaintiff's Request for Attorneys' Fees Places More Than $1.6 Million in Controversy ....................................................... 14

          5.      Just Three of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Place More Than $8 Million in Controversy ..... 15

    D.      This Court May Exercise Supplemental Jurisdiction Over Plaintiff's PAGA Claims ...................................................................................... 16

III. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ............... 16

1

**TABLE OF AUTHORITIES**

2
Page(s)

3

4

**CASES**

5

*Arias v. Residence Inn by Marriott*,
   936 F.3d 920 (9th Cir. 2019) ........................................................................7, 8, 14

6

7

*Barcia v. Contain-A-Way, Inc.*,
   2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ............................................................14

8

9

*Campbell v. Vitran Express, Inc.*,
   471 F. App'x 646 (9th Cir. 2012) ............................................................................8

10

11

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014) ................................................................................................7, 8

12

13

*Ehrman v. Cox Commc'ns, Inc.*,
   932 F.3d 1223 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) .......................5

14

15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................14

16

17

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ...................................................................................................5

18

*Johnson v. Columbia Props. Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006) ...................................................................................5

19

20

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) .................................................................................4

21

22

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ...................................................................8

23

24

*LaCross v. Knight Transp. Inc.*,
   775 F.3d 1200 (9th Cir. 2015) .................................................................................7

25

26

*Lewis v. Verizon Commc'ns, Inc.*,
   627 F.3d 395 (9th Cir. 2010) ...................................................................................7

27

*Lopez v. Adesa, Inc.*,
   2019 WL 4235201 (C.D. Cal. Sept. 6, 2019) ..........................................................5

28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Mann v. City of Tucson, Dep't of Police*,
782 F.2d 790 (9th Cir. 1986)......................................................................4

*Mays v. Wal-Mart Stores, Inc.*,
804 F. App'x 641 (9th Cir. Mar. 17, 2020) ............................................13

*Mejia v. DHL Express (USA), Inc.*,
2015 WL 2452755 (C.D. Cal. May 21, 2015) ......................................13

*Salter v. Quality Carriers, Inc.*,
974 F.3d 959 (9th Cir. 2020)...............................................................7, 8

*Soto v. Tech Packaging, Inc.*,
2019 WL 6492245 (C.D. Cal. Dec. 3, 2019) ...................................11, 13

*Std. Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)...................................................................................7

**STATUTES**

28 U.S.C. § 84(c) ..........................................................................................16

28 U.S.C. § 1332(c)(1) ..............................................................................5, 6

28 U.S.C. § 1332(d) ........................................................................2, 3, 4, 6, 7

28 U.S.C. § 1332(d)(2)(A) .............................................................................6

28 U.S.C. § 1332(d)(7) ..................................................................................4

28 U.S.C. § 1441.......................................................................................3, 16

28 U.S.C. § 1446(a) ..................................................................................1, 16

28 U.S.C. § 1446(b) .......................................................................................1

Cal. Lab. Code § 226(e)(1) .........................................................................12

Lab. Code, § 510(a) ........................................................................................9

Gibson, Dunn &
Crutcher LLP

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF LATISHA SHACONNA ANDERSON, AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Barton & Associates, Inc. (erroneously sued as Barton Myers Associates, Inc. and Barton Associates Inc.) hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 21STCV43314 in the Superior Court of California, Los Angeles County. Removal is proper on the following grounds:

## I.  TIMELINESS OF REMOVAL

1.  Plaintiff Latisha Shaconna Anderson ("Plaintiff") filed a putative Class Action Complaint against Barton & Associates, Inc. (erroneously sued as Barton Myers Associates, Inc. and Barton Associates Inc.) ("Barton") in Los Angeles County Superior Court, State of California, Case No. 21STCV43314, on November 24, 2021. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons issued on November 24, 2021 to Barton (erroneously sued as Barton Myers Associates, Inc.) and Class Action Complaint filed on November 24, 2021; (b) Civil Case Cover Sheet and Addendum filed on November 24, 2021; (c) Notice of Case Assignment filed on November 24, 2021; (d) Initial Status Conference Order; (e) Court Order Re Initial Status Conference; (f) Court's ADR packet; and (g) correspondence between Zakay Law Group and Littler Mendelson, P.C. reflecting electronic service on Barton are attached as Exhibits A–G to the Declaration of Michael Holecek ("Holecek Decl.") filed concurrently here.

2.  Barton completed and returned a signed Acknowledgment of Receipt to Plaintiff on December 28, 2021. *See* Holecek Decl., Ex. P. Consequently, service was completed on December 28, 2021. This notice of removal is timely because it is filed within 30 days after service was completed. 28 U.S.C. § 1446(b).

## II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3.   Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Barton pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.   CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Holecek Decl. Ex. A, Compl. ¶ 15 & Prayer for Relief.

5.   Plaintiff requests that "the Court certify the First Cause of Action asserted by the CALIFORNIA CLASS as a class action" and that "the Court certify the Second, Third, Fourth, Fifth, Sixth, and Seventh, Causes of Action asserted by the CALIFORNIA CLASS as a class action[.]"   Holecek Decl. Ex. A, Prayer for Relief. She seeks to represent "all individuals who are or previously were employed by Defendant Myers and/or Defendant Barton and/or Defendant Barton Medical and classified as non-exempt employees (the 'CALIFORNIA CLASS') at any time during the period beginning four years from the date of the filing of this Complaint and ending on a date determined by the Court (the 'CLASS PERIOD')."   Holecek Decl. Ex. A, Compl. ¶ 11.

6.   In her Complaint, Plaintiff alleges eight causes of action against Barton: (1) Unlawful Business Practices in Violation of Business and Professions Code Section 17200 *et seq.*; (2) Failure to Pay Overtime Compensation in Violation of Labor Code Section 510 *et seq.*; (3) Failure to Pay Minimum Wages  in Violation of Labor Code Sections 1194, 1197, and 1197.1; (4) Failure to Provide Required Meal Periods in Violation of Labor Code Sections 226.7 and 512; (5) Failure to Provide Required Rest Periods in Violation of Labor Code Sections 226.7 and 512; (6) Failure to Provide

Accurate Itemized Statements in Violation of Labor Code Sections 226 and 226.2; (7) Failure to Pay Wages When Due in Violation of Labor Code Sections 201, 202, and 203; and (8) Violation of the Private Attorneys General Act (Labor Code Section 2698 *et seq.*).

7. Among other things, Plaintiff alleges that putative class members are entitled to damages, unpaid wages, including statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees and costs. *See* Holecek Decl. Ex. A, Compl., Prayer for Relief.

8. Removal of a class action under CAFA is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

9. Barton denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. Barton also intends to oppose class certification and believes that class treatment is inappropriate under these circumstances in part because there are many material differences between the experiences of Plaintiff and the putative class members she seeks to represent. Barton expressly reserves all rights to oppose class certification, to object to the scope of the class, and to contest the merits of all claims asserted in the Complaint. However, for purposes of the jurisdictional requirements for removal *only*, the allegations in Plaintiff's Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6).

**A.   The Proposed Class Consists of More Than 100 Members**

10. Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contain at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

11.     Plaintiff's proposed class consists of "all individuals who are or previously were employed by Defendant Myers and/or Defendant Barton and/or Defendant Barton Medical and classified as non-exempt employees (the 'CALIFORNIA CLASS') at any time during the period beginning four years from the date of the filing of this Complaint and ending on a date determined by the Court (the 'CLASS PERIOD')."  Holecek Decl. Ex. A, Compl. ¶ 11.  Based *solely* on Plaintiff's alleged definition of the putative class, Barton assumes for the purposes of removal *only* that the putative class would consist of any individual who contracted with Barton to provide services in California during the class period.  Barton does not concede that California law would apply to such a class.  According to Barton's records, at least approximately 1,240 persons contracted with Barton for work in California during the four-year period spanning from November 25, 2017 to November 26, 2021.

12.     Accordingly, while Barton denies that class treatment is permissible or appropriate, as alleged, the proposed class consists of well over 100 members.

**B.     Barton and Plaintiff Are Not Citizens of the Same State**

13.     Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  For purposes of CAFA, the plaintiffs' citizenship is determined "as of the date of filing of the complaint or amended complaint, or if the case stated by the initial pleading is not subject to federal jurisdiction, as of the date of service by plaintiffs of an amended pleading . . . indicating the existence of [f]ederal jurisdiction."  28 U.S.C. § 1332(d)(7); *see also Mann v. City of Tucson*, *Dep't of Police*, 782 F.2d 790, 794 (9th Cir. 1986) (concluding that, for traditional removal, diversity of citizenship is established "at the time of the filing of the complaint, not at the time the cause of action arose or after the action is commenced").

14.     A person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Based on information and belief, Plaintiff is domiciled in North Carolina and is therefore a citizen of North

Carolina for purposes of removal under CAFA.  *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) (holding that defendant's "short and plain statement alleging that [plaintiff] and the putative class members were citizens of California" was "sufficient" to establish jurisdiction for removal under CAFA because "allegations of citizenship may be based solely on information and belief").  In *Lopez v. Adesa, Inc.*, 2019 WL 4235201, at *1 n.2 (C.D. Cal. Sept. 6, 2019), the court rejected the plaintiff's argument that the defendant's notice of removal "contain[ed] 'only allegations of the [p]arties' citizenships,' such as a citation to [defendant's] own records to establish [p]laintiff's citizenship."  Citing *Ehrman*, the Court reasoned that "a party's 'allegation of minimal diversity may be based on information and belief'" and does not "'need to contain evidentiary submissions.'" *Id.* (quoting *Ehrman*, 932 F.3d at 1227).

15.    A corporation is a citizen of its state of incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Barton & Associates, Inc. is a corporation organized under the laws of Delaware  and has its principal place of business in Peabody, Massachusetts.  *See also* Holecek Decl. Ex. A, Compl. ¶ 3.  Barton is a privately owned corporation, and no parent corporation or any publicly held corporation owns ten percent or more of its stock.

16.    The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) and (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  Barton's headquarters, which are located in Massachusetts, constitute its "nerve center[s]" under the test adopted in *Hertz* because their high-level officers oversee each corporation's

activities from that state.  As such, Barton is a citizen of Delaware and Massachusetts.  *See* 28 U.S.C. § 1332(c)(1).

17.  Accordingly, Plaintiff and Barton are citizens of different states and CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

18.  Plaintiff has erroneously included Barton Myers Associates, Inc. as a defendant.  Based on information and belief, Barton Myers Associates, Inc. is an architectural services firm and is wholly unconnected to Plaintiff's allegations.  Nevertheless, this error does not frustrate the Court's removal analysis, because CAFA's minimal diversity requirement is met when the amount in controversy exceeds $5 million and "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant[.]"  *Id.* (emphasis added).

19.  Plaintiff has also erroneously named "Barton Associates, Inc., a California Corporation" as a Defendant in the caption.  Holecek Decl. Ex. A, Compl. at p. 1.  Plaintiff alleges that "Defendant BARTON & ASSOCIATES, INC" ('Defendant Barton') is a California Corporation that at all relevant times owns and operates a locum tenens staffing agency which provided temporary employees to medical and dental facilities in the state of California, county of Los Angeles."  Holecek Decl. Ex. A, Compl. at ¶ 2.  Barton is not and was not during the relevant time period a California corporation.  According to the California Secretary of State's records, an unrelated Barton & Associates, Inc. was registered as a corporation in California in 1982 and dissolved in 2014.  There is no record of a "Barton Associates, Inc." registered as a California corporation.

20.  On December 30, 2021, Plaintiff served on Barton a request to dismiss Barton Myers Associates, Inc. and Barton Associates, Inc. without prejudice.  If the Court grants this request, it will have no effect on the satisfaction of the diversity requirement, because Plaintiff and Barton are citizens of different states.  On that basis alone, CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

Gibson, Dunn &
Crutcher LLP

**C.    The Amount in Controversy Exceeds $5 Million**

21.    CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2).  In calculating the amount in controversy, a court must aggregate the claims of all individual class members.  28 U.S.C. § 1332(d)(6).

22.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)).  That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart Cherokee*, 574 U.S. at 87.  Plaintiff claims that "[t]he amount in controversy for the aggregate claim of CALIFORNIA CLASS Members is under five million dollars" (Holecek Decl. Ex. A, Compl. ¶ 11), but plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court."  *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

23.    Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and

assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

24.    Although Barton denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal *only*, if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

### 1.    Plaintiff's Claim for Failure To Pay Overtime Wages Independently Places More Than $2.6 Million in Controversy

24.    Barton reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied.  *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof," internal quotation marks and citations omitted).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."  *Arias*, 936 F.3d at 924.

25.    Plaintiff alleges that "DEFENDANTS' practices were deceptive and fraudulent in that DEFENDANTS' uniform policy and practice failed to . . . provide . . . overtime and minimum wages owed."  Holecek Decl., Ex. A, Compl. ¶ 44.  Plaintiff further alleges that "DEFENDANTS' uniform pattern of unlawful wage and hour

practices manifested, without limitation, applicable to the CALIFORNIA CLASS as a whole, as a result of implementing a uniform policy and practice that failed to accurately record overtime worked by PLAINTIFF and other CALIFORNIA CLASS Members and denied accurate compensation to PLAINTIFF and the other members of the CALIFORNIA CLASS for overtime worked, including, the overtime work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek." *Id.* at ¶ 61. Finally, Plaintiff alleges that "[a]s a direct result of DEFENDANTS' unlawful wage practices as alleged herein, PLAINTIFF and the other members of the CALIFORNIA CLASS did not receive full compensation for all overtime worked." (*Id.* at ¶ 63.)

26.   Barton denies that any such wages are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, Barton relies on Plaintiff's allegations that the wages are owed.

27.   During Plaintiff's five weeks of work pursuant to her contract with Barton from June 2021 to July 2021, she worked a total of 79.67 hours "in excess of eight hours in one workday and . . . in excess of 40 hours in any one workweek[.]" Lab. Code, § 510(a). This results in an average of no less than fifteen hours per week that, if Plaintiff's claims are to be taken at face value, allegedly should have been compensated at "no less than one and one-half times the regular rate of pay." *Id.*

28.   Based on Barton's records, at least approximately 1,240 workers contracted with Barton to perform services in California during the four-year period spanning from November 25, 2017 to November 26, 2021. These workers worked a total of 20,801 individual weeks during this timeframe, as evidenced by 20,801 individual timesheets. The average rate of compensation over this four-year period was $82 per hour. Plaintiff alleges that "PLAINTIFF and the other members of the CALIFORNIA CLASS were required to work, and did in fact work, overtime as to which DEFENDANTS failed to accurately record and pay using the applicable overtime rate as evidenced by DEFENDANTS' business records and witnessed by employees." Holecek Decl., Ex. A,

Compl. ¶ 66.  According to Barton's records, during the class period, putative class members worked at least approximately 16,000 12-hour shifts, resulting in at least approximately 64,000 overtime hours (assuming that the putative class members were entitled to overtime compensation, which Barton disputes).  Based on this estimate, the amount in controversy with respect to Plaintiff's First and Second Causes of Action for unpaid overtime wages is approximately **$2.6 million**, calculated as follows:

| | |
|---|---:|
| Conservative estimate of total 12-hour shifts worked by putative class members: | 16,000 |
| Conservative estimate of total overtime hours worked by putative class members (15,000 shifts x 4 overtime hours): | 64,000 |
| Alleged unpaid overtime hourly rate ($82 x .5) | $41 |
| Amount in controversy for unpaid overtime claim, based on Plaintiff's allegations (64,000 x $41): | **$2,624,000** |

29.    The amount in controversy alleged by Plaintiff on this claim alone exceeds $2.6 million.

**2.    Plaintiff's Claims for Unpaid Meal Periods and Rest Periods Place More Than $3.4 Million in Controversy**

30.    As restitution under Plaintiff's Unlawful Business Practices claim, she demands "on behalf of herself and on behalf of each CALIFORNIA CLASS Member, one (1) hour of pay for each workday in which an off-duty meal period was not timely provided for each five (5) hours of work, and/or one (1) hour of pay for each workday in which a second off-duty meal period was not timely provided for each ten (10) hours of work."  Holecek Decl., Ex. A, Compl. ¶ 47.  Plaintiff also demands "on behalf of herself and on behalf of each CALIFORNIA CLASS Member, one (1) hour of pay for each workday in which an off duty paid rest period was not timely provided as required by law."  *Id.* at ¶ 48.

31.    Plaintiff alleges that "as a result of PLAINTIFF's demanding work requirements and DEFENDANT's understaffing, DEFENDANTS required PLAINTIFF to work while clocked out during what was supposed to be PLAINTIFF's off-duty meal break."  *Id.* at ¶ 18.  Plaintiff also alleges that "PLAINTIFF and

CALIFORNIA CLASS members were also required from time to time to work in excess of four (4) hours without being provided ten (10) minute rest periods as a result of their rigorous work schedule, being required to take orders, receive payments, expedite services, provide janitorial services, and DEFENDANTS' inadequate staffing." *Id.* at ¶ 20. Plaintiff alleges a "systematic underpayment of . . . meal and rest period premiums . . . to PLAINTIFF and other CALIFORNIA CLASS Members by DEFENDANT." *Id.* at ¶ 25. The breadth of Plaintiff's allegations, combined with a lack of explanation or clarification as to how often the alleged meal and rest period violations occurred, justifies a hypothetical violation rate of 100%: at least one meal period violation and one rest period violation per day. *See Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *4 (C.D. Cal. Dec. 3, 2019) ("Based upon the Complaint's broadly worded allegations, the Court agrees with Defendant that one meal break and one rest break violation per workday is a reasonable assumption. This Court and numerous other courts have found similar allegations supportive of a 100% violation rate assumption, *i.e.*, assuming a single violation per work day.").

32. Barton denies that any such wages are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, Barton relies on Plaintiff's allegations that the wages are owed.

33. Assuming the bare minimum of workdays—that each of the 20,801 weekly timesheets contains only one workday—this results in an amount in controversy attributable solely to unpaid meal and rest periods of more than **$3.4 million**,[1] calculated as follows:

---

[1] The result would be the same if one assumed a 5-day workweek and 20% violation rate.

| | |
|---|---|
| Total weeks worked by putative class members during class period: | 20,801 |
| Alleged meal break violations (one per workweek): | 20,801 |
| Alleged rest period violations (one per workweek): | 20,801 |
| Average hourly rate of compensation: | $82 |
| Amount in controversy for unpaid meal and rest period violation claims (20,801 x 2 x $82): | **$3,411,364** |

**3.    Plaintiff's Claim for Alleged Violation of Labor Code Section 226 Places $485,000 in Controversy**

34.    Plaintiff alleges in her Sixth Cause of Action that Barton "failed to provide PLAINTIFF and the other members of the CALIFORNIA CLASS with complete and accurate wage statements" and that "DEFENDANTS failed to provide itemized wage statements to PLAINTIFF and members of the CALIFORNIA CLASS that complied with the requirements of California Labor Code Section 226."  Holecek Decl., Ex. A, Compl. ¶¶ 95, 96.  On this ground, Plaintiff seeks "liquidated damages of fifty dollars ($50.00) for the initial pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation in a subsequent pay period pursuant to Cal. Lab. Code § 226, and all other damages and penalties available pursuant to Labor Code § 226.2(a)(6), all in an amount according to proof at the time of trial (but in no event more than four thousand dollars ($4,000.00) for PLAINTIFF and each respective member of the CALIFORNIA CLASS herein."  *Id.* at ¶ 97.

35.    Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e)(1).

36.    Barton denies that any such penalties are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis *only*, Barton relies on

Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that "when PLAINTIFF and other CALIFORNIA CLASS Members missed meal and rest breaks, or were paid inaccurate missed meal and rest period premiums, or were not paid for all hours worked, DEFENDANTS also failed to provide PLAINTIFF and other CALIFORNIA CLASS Members with complete and accurate wage statements which failed to show, among other things, the total hours worked and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate, correct rates of pay for penalty payments or missed meal and rest periods." Holecek Decl., Ex. A, Compl. ¶ 20.  Plaintiff's wage statement claim is therefore entirely derivative of her other claims for unpaid wages, including minimum wage and other premium wages.  Further, Plaintiff alleges that the alleged wage statement violations "are knowing and intentional, were not isolated or due to an unintentional payroll error due to clerical or inadvertent mistake."  *Id.* at ¶ 22.  Based on those allegations, it is reasonable to assume for the purposes of this jurisdictional analysis only, that all class members received inaccurate wage statements each pay period.  *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019).[2]

37.   Based on Barton's records, at least approximately 1,240 workers contracted with Barton to perform services in California during the four-year period spanning from November 25, 2017 to November 26, 2021.  These workers worked a total of 20,801 individual weeks during this timeframe, as evidenced by 20,801 individual timesheets. Prorating conservatively, it can be estimated that between November 27, 2020 and November 26, 2021, 300 workers worked a total of 5,000 individual weeks.  During this time, it was Barton's practice to pay putative class members weekly (i.e., there were 52

---

[2]  Barton does not concede that penalties under § 226 are recoverable for a derivative theory of liability like the one Plaintiff advances here.  *See Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 643 (9th Cir. Mar. 17, 2020).

billing cycles during this one-year period). If there were 5,000 inaccurate wage statements (and Barton disputes that any wage statements were inaccurate), Plaintiff's wage statement claim would place **$485,000** in controversy, calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for 300 putative class members (300 initial pay periods x $50): | $15,000 |
| Penalty for 4,700 subsequent pay periods (4,700 subsequent pay periods x $100): | $470,000 |
| Amount in controversy for section 226 claim, based on Plaintiff's allegations: | **$485,000** |

**4.      Plaintiff's Request for Attorneys' Fees Places More Than $1.6 Million in Controversy**

38.      Plaintiff also explicitly seeks attorneys' fees should he recover for any of the claims in this action. *See* Holecek Decl., Ex. A, Prayer for Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'").

39.      Here, Barton has established that the total amount in controversy is at least **$6.4 million**, and Plaintiff has not indicated that she will seek less than 25% of a common fund in attorneys' fees. *See* Holecek Decl., Ex. A, Prayer for Relief (seeking attorneys' fees). Although Barton has shown that the amount in controversy absent attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees in evaluating jurisdiction. *Arias*, 936 F.3d at 922. Barton denies that any such attorneys' fees are owed to Plaintiff or putative class

members.  However, for purposes of this jurisdictional analysis *only*, Barton relies on Plaintiff's allegations that the attorneys' fees are owed.

40.    Using a 25% benchmark figure for attorneys' fees for Plaintiff's allegations regarding alleged unpaid overtime wages results in estimated attorneys' fees of approximately **$1.6 million**, calculated as follows:

| | |
|---|---|
| Estimate of Amount in Controversy from Unpaid Overtime Claims: | $2.6 million |
| Estimate of Amount in Controversy from Unpaid Meal/Rest Period Claims: | $3.4 million |
| Estimate of Amount in Controversy from Inaccurate Wage Statement Claims: | $485,000 |
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | **$1,621,250** |

**5.    Just Three of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Place More Than $8 Million in Controversy**

41.    In summary, Plaintiff's allegations regarding unpaid overtime claims places more than $2.6 million in controversy.  Plaintiff's allegations regarding unpaid meal and rest periods also places more than $3.4 million in controversy.  And Plaintiff's allegations regarding inaccurate wage statements places roughly $485,000 in controversy.  Attorneys' fees on these three claims alone would place an additional $1.6 million in controversy, resulting in a total estimated amount in controversy of greater than **$8 million**.  This amount in controversy calculation underestimates the total amount placed in controversy by Plaintiff's complaint because it is based on conservative assumptions about Plaintiff's putative class allegations and does not account for, among other things, any recovery sought in Plaintiff's Causes of Action Three (Failure to Pay Minimum Wages), Seven (Failure to Pay Wages When Due), and Eight (Violation of the Private Attorneys General Act).

42.     Plaintiff's allegations therefore place more than the requisite $5 million in controversy.  The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

**D.     This Court May Exercise Supplemental Jurisdiction Over Plaintiff's PAGA Claims**

43.      Because this Court has original jurisdiction over Plaintiff's class claims under CAFA, the Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims.  Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Plaintiff's PAGA and class claims concern the same alleged misconduct by Defendant; therefore, the PAGA claims are properly within the Court's supplemental jurisdiction.

**III.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER**

44.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

a)   This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

b)   The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

c)   The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

d)   At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

45.     The United States District Court for the Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action

was originally filed in the Los Angeles Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

46.    Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons issued on November 24, 2021 to Barton (erroneously sued as Barton Myers Associates, Inc.) and Class Action Complaint filed on November 24, 2021; (b) Civil Case Cover Sheet and Addendum filed on November 24, 2021; (c) Notice of Case Assignment filed on November 24, 2021; (d) Initial Status Conference Order; (e) Court Order Re Initial Status Conference; (f) Court's ADR packet; and (g) Notice of Acknowledgment and Receipt are attached as Exhibits A through Q to the Declaration of Michael Holecek ("Holecek Decl.") filed concurrently here.  These filings constitute the complete record of all records and proceedings in the state court.

47.    Upon filing the Notice of Removal, Barton will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).


Dated:  January 5, 2022

MICHAEL J. HOLECEK
GIBSON, DUNN & CRUTCHER LLP


By: */s/ Michael J. Holecek*
        Michael J. Holecek


Attorneys for Defendant
BARTON & ASSOCIATES, INC. (erroneously sued as Barton Myers Associates, Inc. and Barton Associates Inc.)

Gibson, Dunn &
Crutcher LLP